IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | No. 1:24-CR 39 - MJT |
| TPC GROUP LLC | § § § | |

**INFORMATION**

The United States Attorney charges that at all times relevant to this Information:

a. Background

1. TPC Group LLC ("TPC Group") was incorporated in Texas, and had a principal office in Houston, Texas. In 2019, TPC Group had multiple facilities including one in Port Neches, Jefferson County, Texas, referred to as the Port Neches Operations facility ("TPC PNO facility"). At that time, the TPC PNO facility produced hydrocarbon derivatives including 1,3-butadiene ("Butadiene"), which was primarily used to manufacture synthetic rubber and resins.

b. The Explosion

2. On November 27, 2019, an explosion occurred at the South Unit of the TPC PNO facility, injuring five individuals. A secondary explosion followed, and a series of fires erupted at the facility and emitted contaminants into the air. As a result of the explosions, mandatory evacuations were ordered for residents within a four-mile radius from the facility, voluntary shelter-in-place orders were issued for residents in the surrounding area, and local schools were closed for multiple days to allow buildings to be cleaned, repaired, and inspected.

c. Law

<u>The Clean Air Act</u>

3. The Clean Air Act ("CAA"), 42 U.S.C. § 7401 <u>et seq.</u>, is the Nation's comprehensive air pollution control statute. One of the purposes of the CAA is "to protect and enhance the quality of the Nation's air resources." <u>Id.</u> §§ 7401(b)(1), 7470.

<u>Risk Management Program Requirements</u>

4. In 1990, Congress enacted Section 112(r)(7) of the CAA in response to releases of chemicals in the United States and abroad that killed or injured many people. Section 7412(r)(7) of the CAA directed the Administrator of the Environmental Protection Agency ("EPA") to create reasonable regulations to prevent the release of certain chemicals and to minimize the consequences of any releases that occurred. <u>Id.</u> § 7412(r)(7)(B).

5. In 1996, EPA promulgated a final rule known as the Risk Management Program ("RMP"), 40 C.F.R. Part 68, which implements Section 112(r)(7) of the CAA. The regulations of the RMP are applicable to owners and operators of stationary sources that have more than a threshold quantity of a regulated substance in a "process." 40 C.F.R. § 68.10.

6. A "process" is "any activity involving a regulated substance including any use, storage, manufacturing, handling, or on-site movement of such substances." <u>Id.</u> § 68.3. A "covered process" "means a process that has a regulated substance present in more than a threshold quantity as determined under § 68.115."

7. Butadiene is a regulated substance for purposes of the RMP and the threshold quantity for Butadiene is 10,000 pounds. <u>Id.</u> § 68.130, Table 3.

8. A stationary source is "any building, structure, facility, or installation which emits or may emit any air pollutant." 42 U.S.C. §§ 7411(a)(3), 7412(a)(3). Butadiene is one such air pollutant. Id. § 7412(b)(1).

9. The RMP regulations are categorized into three levels based on the degree of risk posed by the covered process. The TPC PNO facility was subject to the RMP's strictest level of regulation, Program 3, because: (1) the facility was not eligible for coverage under the more limited requirements of Program 1 because a worst-case release of regulated substances from the facility could affect the public; (2) the facility was engaged in petrochemical manufacturing, North American Industry Classification System Code (NAICS) 32511; and (3) the facility was subject to the Process Safety Management regulations located at 29 C.F.R. § 1910.119 issued by the Occupational Safety and Health Administration. 40 C.F.R. § 68.10(g), (i).

10. Owners and operators subject to the Program 3 regulations must "[d]evelop and implement written operating procedures that provide clear instructions for safely conducting activities involved in each covered process." Id. § 68.69(a).

11. Any person who knowingly violates any requirement of Section 7412(r) of the CAA, including requirements of regulations promulgated by the EPA under the authority of Section 7412(r), has committed a crime. 42 U.S.C. § 7413(c)(1).

d.  Factual Background

12. Butadiene, a hazardous chemical and extremely flammable liquid and vapor, is used to manufacture polymers such as synthetic rubbers, and is used in the production of tires, latexes, and plastics. Butadiene is a known human carcinogen and has been shown to cause cancer and birth defects in laboratory animals.

13. Butadiene can form into a polymer in several ways, including forming a hard and insoluble white crystalline polymer known as "popcorn polymer," which is produced when oxygen reacts with Butadiene. Popcorn polymer in an active state can grow at a constantly accelerating rate referred to as a "runaway reaction," which has the potential to cause serious or catastrophic events, including explosions and fires. The growth of popcorn polymer, which will continue indefinitely unless inhibited, is particularly common in areas of process equipment with little or no flow or turbulence, also known as "deadlegs."

14. The November 27, 2019, explosion at the TPC PNO facility was caused by the uninhibited growth of popcorn polymer in a deadleg. This loss of containment was caused by the accumulation and growth of popcorn polymer in a line from one of the facility's towers to a pump after TPC Group removed the pump from service.

15. The TPC PNO facility had a written operating procedure to address the potential for popcorn polymer growth in deadlegs. The procedure required the injection of Diethylhydroxylamine ("DEHA"), a popcorn polymer inhibitor, into deadlegs and/or the monthly operation of a pump to flush the line. This procedure was entitled "Dead Legs in High Purity Butadiene Service."

16. TPC Group knowingly failed to implement its own written operating procedure entitled "Dead Legs in High Purity Butadiene Service."

## **CRIMINAL CHARGE**

**Knowing Violation of Requirement to Prevent Accidental Releases**

[Failure to Implement Written Operating Procedures]

17. The allegations of Paragraphs 1 through 16 are incorporated by reference as if fully set forth herein.

18. From in or about September 2019, to on or about November 27, 2019, in the Eastern District of Texas and elsewhere, the Defendant,

TPC GROUP LLC,

as an owner and an operator of a stationary source with more than a threshold quantity of a regulated substance in a covered process, did knowingly violate a requirement of a regulation promulgated under the Clean Air Act to prevent accidental releases of regulated substances, specifically, Title 40, Code of Federal Regulations, Section 68.69(a), by failing to implement written operating procedures that provided clear instructions for safely conducting activities involved in each covered process, to wit: failure to implement its own written procedures requiring the injection of DEHA popcorn polymer inhibitor into the line connecting pump S4G7 to tower S4D4 when the pump was removed from service and/or the monthly flushing of the pump.

In violation of 42 U.S.C. §§ 7412(r) and 7413(c)(1), and 18 U.S.C. § 2.

> TODD KIM
> ASSISTANT ATTORNEY GENERAL
> ENVIRONMENT and NATURAL
> RESOURCES DIVISION
>
> By: *Christopher J. Costantini*
> CHRISTOPHER J. COSTANTINI
> Senior Trial Attorney
> Pennsylvania Bar No. 64146
> Environmental Crimes Section
> 4 Constitution Square
> 150 M Street, NE, Suite 4.212
> Washington, DC 20044

DAMIEN M. DIGGS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF TEXAS

JOSEPH R. BATTE
Assistant United States Attorney
Eastern District of Texas
Texas Bar No. 01918070
550 Fannin, Suite 1250
Beaumont, Texas 77701
(409) 839-2538
(409) 839-2550 (fax)
email: joe.batte@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § | No. 1:24-CR 39-MJT |
| | § § § | |
| TPC GROUP LLC | § | |

# **NOTICE OF PENALTY**

## **Count One**

Violation:          42 U.S.C. §§ 7412(r) and 7413(c)(1), and 18 U.S.C. § 2

Penalty:          a term of probation of not more than five years; a fine not to exceed 500,000, or twice any pecuniary gain to the defendant or loss to the victim(s); or both;

Special Assessment:          a mandatory special assessment of $400.00, which must be paid by cashier's check or money order to the United States District Clerk before sentencing